Konrad Gatien (SBN 221770)
*kg@keatsgatien.com*
Matthew E. Graham (SBN 308115)
*matt@keatsgatien.com*
KEATS GATIEN, LLP
120 S. El Camino Drive, Suite 207
Beverly Hills, California 90212
Telephone:  (424) 302-0692

Attorneys for Plaintiff
JFELD, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JFELD, LLC, a Texas limited liability company,<br><br>           Plaintiff,<br><br>     v.<br><br>BLANKET LOVERS D/B/A WWW.BLANKETLOVERS.COM, a company of unknown origin, BEDDING LOVERS D/B/A WWW.BEDDINGLOVERS.COM and DOES 1-10,<br><br>           Defendants. | Case No.:  2:20-cv-08804 DSF (PLAx)<br><br>*[Assigned to the Hon. Dale S. Fischer]*<br><br>**SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS**<br><br>*[filed concurrently with Declaration of Konrad Gatien, Declaration of Mike Swinford, and [Revised Proposed] Order]*<br><br>Date:  May 19, 2021<br>Time:  n/a<br>Place:  First Street Courthouse<br>          350 West 1st Street, Ctrm. 7D<br>          Los Angeles, California 90012 |

## I.    INTRODUCTION.

On April 19, 2021, the Court granted in part plaintiff, JFeld, LLC's ("JFeld" or "Plaintiff"), Motion for Default Judgment against defendants Blanket Lovers d/b/a www.blanketlovers.com ("Blanket Lovers") and Bedding Lovers d/b/a www.beddinglovers.com ("Bedding Lovers") (collectively, "Defendants"). (Dkt. 20.)

In doing so, the Court granted with certain modifications JFeld's motion for a permanent injunction against Defendants.  (*Id.*)  To reflect the Court's changes, JFeld has made those modifications to the proposed injunction and submitted it concurrently herewith including modifications to the proposed damages award.

In addition, in the above-referenced Order, the Court stated: "JFeld has failed to provide the types of evidence that would allow the Court to conclude its estimated damages are reasonable. The Court will give JFeld the opportunity to submit further evidence of the basis for its damages no later than May 19, 2021." (Dkt. 20, p. 12.)

Based on Defendants' default and failure to participate in this action, other than two evidentiary purchases, Plaintiff is unable to provide further evidence of Defendants' actual sales in addition to the evidence provided in support of Plaintiff's motion for Default Judgment. (Dkt. 19.)[1]  In addition, as JFeld's business has been growing and expanding based on JFeld's investment in its intellectual property assets, Plaintiff is unable to establish with reasonable certainty the amount of profits actually lost due to Defendants' trafficking in the Infringing Goods.

That said, it would be contrary to law and public policy to allow Defendants to avoid an adverse monetary award by refusing to participate in this action. Accordingly, Plaintiff hereby supplements its request for damages as set forth below and respectfully asks the Court to issue a total damages award (including an enhancement for willfulness) between $500,000 to $1,000,000, in the Court's discretion.

---

[1] Plaintiff purchased two blankets bearing infringements of Plaintiff's BLUE OCTOBER trademarks for a total amount of $122.96.  *See* Supplemental Declaration of Konrad Gatien in Support of Plaintiff's Motion for Default Judgment ("Gatien Supp. Dec.") ¶¶ 17, 18, filed concurrently herewith.

## II.   ARGUMENT.

### A.   Damages Are Appropriate in an Amount Sufficient to Punish and Deter Defendants and Third Parties from Committing Willful Acts of Trademark Infringement.

As the Court has noted, "The Lanham Act provides that, ***subject to the principles of equity***, a trademark owner may 'recover (1) defendant's profits, (2) any damages sustained by plaintiff, and (3) the costs of the action.'" 15 U.S.C. § 1117(a) (emphasis added). (Dkt. 20, p. 11.)

There is no dispute that Defendants advertised and offered for sale a large number of infringing items (the "Infringing Goods"). (Declaration of Konrad Gatien in Support of Plaintiff's Motion for Default Judgment Against Defendants ("Gatien Decl."), Exhs. 5, 6.) (Dkt. 19.)

The Infringing Items consisted of living room rugs, quilt blankets, sofa blankets, bedding, and travel tumblers--all in various sizes and designs. (*Id.*)

As the Court acknowledged, "each Defendant offered at least 30 different items for sale…given the variations in design and size [of each item], each Defendant offered approximately 200 variations" of their Infringing Goods. (Dkt. 20, p. 12.)

Moreover, although the retail price of the goods varied from $52.99-$195.95, by the time JFeld became aware of Defendants' sales based on complaints received from JFeld's customers, said items were offered at a discount, ranging in prices between $25 to $160 per item.

The issue, then, for the Court to decide is the reasonable amount to award to JFeld, ***subject to the principles of equity***, that will be sufficient to punish and deter defendants and third parties from committing willful acts of trademark infringement.

As the Court noted, the Central District of California has issued a damages award in a default judgment case for $1,603,200 where the trademark infringement was willful. *See In Nitro NRG Corp. v. Liquid Nitro Beverages, Inc.*, No. EDCV 16-2315 JGB (DTBx), 2018 WL 6333691, at *4 (C.D. Cal. May 25, 2018). (Dkt 20, p. 8.)

-2-

In addition, the Central District has issued a damages award in a default judgment case for $1,023,151.27.  (*Id.*, citing *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012).

Notably, the court in *Wecosign* found such orders to be consistent with other trademark infringement default judgments. (*Id.*)

In addition to the foregoing, courts have relied upon evidence of social media and customer confusion to help determine an equitable amount of damages to award an aggrieved plaintiff.

For example, in *Same Day Garage Door Services v. Y.N.G. 24/7 Locksmith LLC*, (D. Ariz. 2020) (Slip Copy), the court stated:

> Y.N.G.'s failure to respond to the Complaint makes it is impossible for Plaintiff to prove actual damages. *See Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008). Plaintiff has, however, attempted to quantify its damages through the affidavit of Joshua Jacoby, Plaintiff's web marketing director. (Doc. 20-2.) See Doe v. United States, No. CV-17-01991-PHX-GMS (JZB), 2018 WL 2431774, at *8 (D. Ariz. May 30, 2018) ("In determining damages, a court can rely on declarations submitted by the plaintiff[.]") (citation omitted). Mr. Jaboby estimates that Defendant's conduct has resulted in a loss of 20 calls per month, with an average "ticket" of $500 each. (Id. at 2.) Mr. Jacoby also states that Defendant's action has created social medial confusion, as "numerous clients who interacted with the wrong business then went to our social media, which resulted in time lost, and more importantly brand dilution." (Id.)

1    Similarly, JFeld has submitted concurrently herewith the declaration of Mr.

2 Swinford setting forth instances of actual customer confusion that have arisen from

3 Defendants' sales of the Infringing Goods. (Declaration of Mike Swinford in Support

4 of Plaintiff's Supplemental of Points and Authorities in Support of Plaintiff's Motion

5 for Default Judgment Against Defendants ("Swinford Dec.") ¶ 3, and Exhs. 1-3).

6    Moreover, Mr. Swinford has confirmed that in or about August 2020, JFeld

7 began selling blankets bearing the BLUE OCTOBER trademark. (Id., ¶ 2.)

8    From August 2020 to April 2021, JFeld earned approximately $53,000 in

9 revenue from its sales of such blankets. Assuming Defendants' sales were comparable

10 to Plaintiff's sales, the annualized sales of the Infringing Goods would be $70,666.

11 Over a two-year period, that amount would be $141,332.

12    Plaintiff respectfully submits that such an award in actual damages would be

13 reasonable and conservative given the fact that Defendants sold many more products

14 and variations of products than were offered by Plaintiff.

15    Tellingly, during the period in which JFeld has sold authentic blankets bearing

16 the BLUE OCTOBER mark, the Defendants' sales platforms aggressively solicited

17 BLUE OCTOBER fans with ads for their Infringing Goods. (Swinford Dec., ¶ 2.)

18 Plaintiff estimates that it reasonably will cost between $10,000 to $25,000 to perform

19 corrective advertising to address and remedy the confusion caused by Defendants'

20 infringing sales, and respectfully asks that this amount be included in any award

21 granted by the Court.

22    Similar to the cases cited in Plaintiff's moving brief in support of default

23 judgment, this case presents issues that are analogous to those typically encountered in

24 counterfeiting cases where "records are frequently nonexistent, inadequate or

25 deceptively kept in order to willfully deflate the level of infringement activity actually

26 engaged in, making proving actual damages in these cases extremely difficult if not

27 impossible." S. Rep. No. 104-177 § 7 (1995), available at 1995 WL 709282.

28

1      In such cases, the Court cannot stand by and reward the Defendants' refusal to

2  participate in the judicial process.

3      Examples of damages found to be appropriate in default judgements include the

4  following:

5      &bull; *Same Day Garage Door Services v. Y.N.G. 24/7 Locksmith*

6         *LLC*, 2020 WL 1659913 (D. Ariz. 2020) awarding $100,000 in

7         default damages ("Y.N.G.'s failure to respond to the Complaint

8         makes it is impossible for Plaintiff to prove actual damages."

9         (citing *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1238

10        (E.D. Cal. 2008).

11      &bull; *Twitch Interactive, Inc. v. Johnston*, 2019 WL 3387977 at *10

12         (N.D. Cal.) awarding $100,077.51 in actual damages for

13         defendant's Lanham Act violations.

14      &bull; *Sprint Nextel Corp. v. Thuc Ngo*, 2014 WL 869486, at *5

15         (N.D. Cal. Mar. 3, 2014) (awarding plaintiff $316,698.00 in

16         "actual damages trebled" against a defaulting defendant in a

17         trademark and unfair competition case).

18      Moreover, the Court has the authority in cases such as this to award punitive

19  damages in an amount sufficient to punish and deter Defendants and third parties from

20  committing acts of egregious trademark infringement such as those found here.

21      Plaintiff's claims provide a basis for a punitive award.

22      Specifically, Plaintiff's statutory and common law claims for trademark

23  infringement and unfair competition provide for punitive damages.

24         [i]n an action for the breach of an obligation not

25         arising from contract [i.e., tort], where it is proven

26         by clear and convincing evidence that the defendant

27         has been guilty of oppression, fraud, or malice, the

28         plaintiff, in addition to the actual damages, may

1              recover damages for the sake of example and by

2              way of punishing the defendant.  Cal.Civ.Code §

3              3294(a). We are aware of no authority which

4              suggests that this provision may not be applied to

5              common law unfair competition claims.

6 *Duncan v. Stuetzle*, 76 F.3d 1480, 1490 (9th Cir. 1996).

7        In conclusion, the foregoing cases, policy, and statutory law make it clear that an

8 award of damages between $100,000 and $1,000,000, which would include an

9 enhancement for willfulness or consideration of punitive damages, is appropriate.

10       **B.**    **Plaintiff Is Entitled to an Award of Attorneys' Fees.**

11        In the Court's order, the Court found that this case is "exceptional" because,

12 *inter alia*, Defendants have disregarded the legal process and refused to appear. (Dkt.

13 20, p. 13, citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494,

14 502 (C.D. Cal. 2003). Accordingly, the Court found that "reasonable attorneys' fees

15 are appropriate" and that such award would be based upon the amount of damages to

16 be awarded pursuant to L.R. 55-3.  (Dkt. 20, p. 13.)

17        Here, Plaintiff's actual attorneys' fees to date are $28,754.16.

18        Based on the formula provided under L.R. 55-3, to approximate the reasonable

19 attorneys' fees actually incurred by Plaintiff, Plaintiff respectfully submits that an

20 appropriate damages award should be not less than $1,000,000, which would result in

21 an attorneys' fees award under L.R. 55-3 of $23,600.

22        All of Defendants' actions, from ignoring Plaintiff's cease-and-desist letters,

23 offering hundreds of different items bearing not only Plaintiff's BLUE OCTOBER

24 trademark, but also images of its band members and images of its album covers,

25 exhibit an egregious and willful intent to trade upon, and to disregard, Plaintiff's rights,

26 which merit an award of enhanced damages and/or punitive damages, attorneys' fees

27 and costs of the action.

28

## III.    CONCLUSION.

Based on the foregoing, and the papers and pleadings on file in this action, Plaintiff respectfully asks the Court to issue an award in its discretion in a total amount between $500,000 and $1,000,000.  The requested amount should be sufficient to punish and deter defendants and others from engaging in egregious acts of trademark infringement and unfair competition, and encourage participation in the judicial process.  In the alternative, if the Court should not find Plaintiff's additional evidence sufficient to warrant granting Plaintiff's request for damages, Plaintiff respectfully asks the Court to grant Plaintiff the right to post-injunctive discovery to subpoena Defendants' payment processing services to attempt to establish the revenues received from all sales from Defendants' websites.

Respectfully submitted,

Dated: May 19, 2021          By:    /s/Konrad Gatien
                                    Konrad Gatien
                                    Matthew E. Graham
                                    KEATS GATIEN, LLP

                                    Attorneys for Plaintiff,
                                    JFELD, LLC